```
                      UNITED STATES DISTRICT COURT
                      EASTERN DISTRICT OF LOUISIANA


C&H TRUCKING, INC.                                    CIVIL ACTION


V.                                                    NO. 15—5678
                                                      C/W 16—0511¹


NEW ORLEANS TRUCKING                                  SECTION F
AND RENTAL DEPOT, INC.,
d/b/a NEW ORLEANS TRUCKING
```

ORDER AND REASONS

Before the Court is New Orleans Trucking and Rental Depot, Inc.'s motion for summary judgment and to dismiss. For the reasons that follow, the motion is GRANTED.

**Background**

These consolidated lawsuits arise out of efforts by two transportation companies to recover payments they allege are due under lease agreements with a trucking company. The transportation companies also seek records under federal regulations pertaining to the leases.

C&H Trucking, Inc. (C&H) began doing business with the defendant, New Orleans Trucking and Rental Depot (NOLA Trucking),

---

[1] This Order and Reasons applies to both cases.

around December 2007. C&H and NOLA Trucking executed a lease agreement, in which C&H leased a vehicle to NOLA Trucking for the transportation of goods. NOLA Trucking apparently intended to use the leased vehicle to transport goods belonging to shippers or other third parties from New Orleans to other destinations.[2] The lease stated that C&H employees, under C&H control, would drive the vehicles. The lease also stated C&H was responsible for all aspects of managing the leased vehicle and its operator: determining the route of the truck; setting working conditions, wages, and rest hours for its driver; and maintenance for the truck. Under the lease, C&H would be paid 70% of the net revenue earned by NOLA Trucking for haul jobs performed with the leased truck (but not less than $1.05 per mile) as well as 100% of all fuel surcharges collected by NOLA Trucking.[3] The lease provided rates of compensation for "East Bank hauls" and "West Bank hauls." Further, the lease provided that C&H was responsible for carrying workmen's compensation insurance on the employees who would be operating the vehicle leased to NOLA Trucking. The lease agreement gave C&H the option to allow NOLA Trucking to deduct an amount

---

[2] The lease does not specify that this is the purpose, but includes references to things such as the revenues NOLA Trucking expected to earn from such work. The lease also included a provision stating that C&H's employees are not responsible for unloading shipping containers, specifying that the "shipper" would perform that work.
[3] Again, although not specified in the lease, these fuel surcharges would presumably be levied against the shippers whose goods NOLA Trucking hauled with the leased vehicle.

2

"equal to [NOLA Trucking]'s prevailing rate" from C&H's compensation to cover the cost of workmen's compensation insurance, which NOLA Trucking would then purchase. C&H elected to take this option, and money for the workmen's compensation insurance was withheld from NOLA Trucking's payments to C&H.[4]

C&H initially sued NOLA Trucking in state court, alleging that NOLA Trucking had overcharged it for the workmen's compensation by $10,150.37. On December 14, 2015, the First City Court of the City of New Orleans dismissed with prejudice C&H's claim.

C&H sued NOLA Trucking in this Court on November 3, 2015, alleging that NOLA Trucking withheld records pursuant to a brokerage transaction in violation 49 U.S.C. §§ 13901, 14704, 14707 and 49 C.F.R. §§ 371 and 376. C&H also alleges in its complaint that "[o]n or about 2012 or 2013," it began to doubt that NOLA Trucking had actually been purchasing the workmen's compensation insurance. C&H alleges that it requested proof of the insurance from NOLA Trucking, but was given neither proof of insurance nor given back the money that had been withheld to pay for it.

---

[4] The parties do not dispute that money was withheld to pay for the insurance.

Meanwhile, Arthur Thompson, Jr. sued NOLA Trucking in this Court on January 21, 2016.[5] On March 02, 2016, the two lawsuits were consolidated. The plaintiffs' complaints are identical, except that Thompson alleges that he did business with NOLA Trucking from February 2009 until 2015.

The plaintiffs seek declaratory and monetary relief. They ask the Court to order NOLA Trucking to produce records of the insurance it was supposed to purchase for the plaintiffs. Because they contend that NOLA Trucking never purchased the insurance, the plaintiffs also seek reimbursement for the insurance payments they made to NOLA Trucking (Count I). The plaintiffs also ask the Court to order NOLA Trucking to produce records pertaining to the lease agreement, which they contend they are entitled to under Federal Motor Carrier Safety Administration regulations, so that they can ensure NOLA Trucking paid them properly under the lease agreement (Count II). Finally, the plaintiffs also seek attorney's fees under 49 U.S.C. § 14704(e).[6]

---

[5] Arthur Thompson, Jr. v. New Orleans Trucking and Rental Depot, Inc., No.16-00511 (E.D. La. filed Jan. 21, 2016). Arthur Thompson was not a party to C&H's lawsuit in state court.

[6] NOLA Trucking has filed a counterclaim against each plaintiff, alleging that it actually paid more for insurance for each plaintiff, respectively, than it received from either of them. NOLA Trucking also alleges it overpaid both plaintiffs under the lease agreement for fuel surcharges and hauls. NOLA Trucking seeks to recover $121,707.00 from Mr. Thompson and $9,466.00 from C&H.

NOLA Trucking now seeks summary judgment or, in the alternative, dismissal pursuant to Rule 12(b)(1) or Rule 12(b)(6), of each of plaintiffs' claims.

I.

A.

The subject matter jurisdiction of federal courts is limited. Kokkonen v. Guardina Life Ins. Co. of Am., 511 U.S. 375, 377 (1994). Indeed, "[i]t is to be presumed that a cause lies outside this limited jurisdiction," the Supreme Court has observed, "and the burden of establishing the contrary rests upon the party asserting jurisdiction." Id. (citations omitted). Motions filed under Rule 12(b)(1) of the Federal Rules of Civil Procedure allow a party to challenge the Court's subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). In challenging this Court's subject matter jurisdiction over the plaintiffs' claims, the defendant contends that the plaintiff failed to state a claim under applicable federal law.

The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction. King v. U.S. Dep't of Veterans Affairs, 728 F.3d 410, 416 (5th Cir. 2013); Ramming v. United States, 281 F.3d 158, 161 (5th Cir. 2001). The Court may find a plausible set of facts to support subject matter jurisdiction by considering any of the following: "(1) the

5

complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." Barrera-Montenegro v. United States, 74 F.3d 657, 659 (5th Cir. 1996). In the absence of a motion by one of the parties, the Court may also examine the basis of its jurisdiction on its own. Crone v. Cockrell, 324 F.3d 833, 836 (5th Cir. 2003). When a plaintiff asserts a civil claim under a federal statute which has no private right of action, the Court does not have subject matter jurisdiction. See Kaw Nation v. Springer, 341 F.3d 1186, 1191 (10th Cir. 2003)(citing Chilikat Indian Village v. Johnson, 870 F.2d 1469 (9th Cir. 1989)); see also Boe v. Fort Belknap Indian Cmty. of Fort Belknap Reservation, 642 F.2d 276, 279 (9th Cir. 1981).

*B.*

In addition to the jurisdictional challenge, the defendant also seeks dismissal of the plaintiff's claims for failure to state a claim under Rule 12(b)(6).  The standard of review applicable to motions to dismiss under Rule 12(b)(1) is similar to that applicable to motions to dismiss under Rule 12(b)(6). See Williams v. Wynne, 533 F.3d 360, 364-65 n.2 (5th Cir. 2008)(observing that the Rule 12(b)(1) and Rule 12(b)(6) standards are similar, but noting that applying the Rule 12(b)(1) standard permits the Court to consider a broader range of materials in resolving the motion). Rule 12(b)(6) of the Federal Rules of Civil Procedure allows a

party to move for dismissal of a complaint for failure to state a claim upon which relief can be granted. Such a motion is rarely granted because it is viewed with disfavor. See Lowrey v. Tex. A & M Univ. Sys., 117 F.3d 242, 247 (5th Cir. 1997) (quoting Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc., 677 F.2d 1045, 1050 (5th Cir. 1982)).

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009)(citing Fed. R. Civ. P. 8). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. at 678 (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

In considering a Rule 12(b)(6) motion, the Court "accept[s] all well-pleaded facts as true and view[s] all facts in the light most favorable to the plaintiff." See Thompson v. City of Waco, Texas, 764 F.3d 500, 502 (5th Cir. 2014) (citing Doe ex rel. Magee v. Covington Cnty. Sch. Dist. ex rel. Keys, 675 F.3d 849, 854 (5th Cir. 2012)(en banc)). But, in deciding whether dismissal is warranted, the Court will not accept conclusory allegations in the complaint as true. Id. at 502-03 (citing Iqbal, 556 U.S. at 678).

To survive dismissal, "'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" Gonzalez v. Kay, 577 F.3d 600, 603 (5th Cir. 2009)(quoting Iqbal, 556 U.S. at 678)(internal quotation marks omitted). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Twombly, 550 U.S. at 555 (citations and footnote omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 ("The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."). This is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 679. "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." Id. at 678 (internal quotations omitted)(citing Twombly, 550 U.S. at 557). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief'", thus, "requires more than labels and conclusions, and a formulaic recitation of the

8

elements of a cause of action will not do." <u>Twombly</u>, 550 U.S. at 555 (alteration in original) (citation omitted).

C.

Federal Rule of Civil Procedure 56 instructs that summary judgment is proper if the record discloses no genuine issue as to any material fact such that the moving party is entitled to judgment as a matter of law. No genuine issue of fact exists if the record taken as a whole could not lead a rational trier of fact to find for the non-moving party. See <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986). A genuine issue of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).

The Court emphasizes that the mere argued existence of a factual dispute does not defeat an otherwise properly supported motion. See <u>id.</u> Therefore, "[i]f the evidence is merely colorable, or is not significantly probative," summary judgment is appropriate. <u>Id.</u> at 249–50 (citations omitted). Summary judgment is also proper if the party opposing the motion fails to establish an essential element of his case. See <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322–23 (1986). In this regard, the non-moving party must do more than simply deny the allegations raised by the moving party. See <u>Donaghey v. Ocean Drilling & Exploration Co.</u>, 974 F.2d

646, 649 (5th Cir. 1992). Rather, he must come forward with competent evidence, such as affidavits or depositions, to buttress his claims. Id. Hearsay evidence and unsworn documents do not qualify as competent opposing evidence. Martin v. John W. Stone Oil Distrib., Inc., 819 F.2d 547, 549 (5th Cir. 1987). Finally, although the Court must "resolve factual controversies in favor of the nonmoving party," it must do so "only where there is an actual controversy, that is, when both parties have submitted evidence of contrary facts." Antoine v. First Student, Inc., 713 F.3d 824, 830 (5th Cir. 2013) (internal quotation marks and citation omitted).

## II.

NOLA Trucking seeks to dismiss, or seeks summary judgment dismissing, plaintiffs' claims. It does not make clear in its motion by which procedural vehicles it asks the Court to dismiss each of the plaintiffs' claims. Throughout their pleadings, the plaintiffs contend that their agreement with NOLA Trucking was a lease for the purposes of Federal Motor Carrier Safety Administration (FMCSA) regulations, and that NOLA Trucking acted as a transportation broker under the same. They contend that their claims in Count I fall under 49 C.F.R. § 376,[7] which regulates motor carrier leases. The plaintiffs' claims in Count I are based

---

[7] This section is also commonly referred to as "Truth-in-Leasing" regulations.

on their allegations that NOLA Trucking violated federal regulations applicable to motor carrier leases when it charged them for insurance and failed to provide them with records showing that it did so properly.[8] The plaintiffs assert their claims in Count II fall under 49 C.F.R. § 371, which regulates transportation brokers. The plaintiffs' claims in Count II are based on their allegations that NOLA Trucking was operating as a broker and violated federal regulations of transportation brokers when it failed to provide records pertaining to the alleged brokerage transactions to all parties involved in the transaction. Plaintiffs assert that because the claims involve violation of federal regulations, there is federal question subject matter jurisdiction. No other basis for subject matter jurisdiction is advanced by the plaintiffs.[9]

*A.*
1.

In Count I, the plaintiffs allege that NOLA Trucking did not purchase insurance for which it was paid and did not give the

---

[8] In Count I, C&H alleges that NOLA Trucking never purchased the workmen's compensation insurance for which it withheld money. NOLA Trucking seeks judgment as a matter of law dismissing C&H's claim in Count I on the ground that it is barred by res judicata. However, the Court need not reach the question of whether the claim is barred because it lacks subject matter jurisdiction where, as here, there is no private right of action.

[9] Nor is any other basis, such as diversity, apparent given that all parties share Louisiana citizenship.

11

plaintiffs proof of insurance when asked, violating federal regulations of motor carrier leases. 49 C.F.R. § 376.2(e) defines "lease" as "[a] contract or arrangement in which the owner grants the use of equipment, with or without driver, for a specified period to an authorized carrier for use in the regulated transportation of property, in exchange for compensation." Section (a) of 49 C.F.R. § 376.1 defines "authorized carrier" as "a person or persons authorized to engage in the transportation of property as a motor carrier under the provisions of 49 U.S.C. 13901 and 13902," which outline various registration requirements for motor carriers not at issue in this case. 49 C.F.R. § 376.12 governs written leases of motor vehicles. In particular, it addresses how charge-back items are to be handled in lease agreements:

> The lease shall clearly specify all items that may be initially paid for by the authorized carrier, but ultimately deducted from the lessor's compensation at the time of payment or settlement, together with a recitation as to how the amount of each item is to be computed. The lessor shall be afforded copies of those documents which are necessary to determine the validity of the charge.

49 C.F.R. § 376.12(h)(2016). That section also requires leases to contain certain provisions if lessors wish to purchase insurance through the motor carrier:

> If the lessor purchases any insurance coverage for the operation of the leased equipment from or through the authorized carrier, the lease shall specify that the authorized carrier will

12

> provide the lessor with a copy of each policy upon the request of the lessor. Also, where the lessor purchases such insurance in this manner, the lease shall specify that the authorized carrier will provide the lessor with a certificate of insurance for each such policy. Each certificate of insurance shall include the name of the insurer, the policy number, the effective dates of the policy, the amounts and types of coverage, the cost to the lessor for each type of coverage, and the deductible amount for each type of coverage for which the lessor may be liable.

49 C.F.R. § 376.12(j)(2016). Neither of these provisions provides a private cause of action in the event of noncompliance with these regulations—all that the plaintiffs allege here. The plaintiffs offer no authority that would support a finding that a private cause of action exists. Further undermining even an attempt to do so, 49 U.S.C. § 14122 specifically describes the Secretary of Transportation's authority to demand records from motor carriers and brokers, but does not provide a private cause of action for failure to provide charge-back records to the lessor. 49 U.S.C. § 14122 (2012).

Congressional silence speaks volumes in the face of express provisions creating private causes of action under other circumstances. For example, 49 U.S.C. § 14704 provides for a private cause of action in limited scenarios:

> A person injured because a carrier or broker providing transportation or service subject to jurisdiction under chapter 135 does not obey an order of the Secretary or the Board, as

> applicable, under this part, except an order for the payment of money, may bring a civil action to enforce that order under this subsection. A person may bring a civil action for injunctive relief for violations of sections 14102, 14103, and 14915(c).[10]

49 U.S.C. § 14704(a)(1)(2012). Although this section provides a private cause of action for injunctive relief, "a plaintiff seeking injunctive relief must allege facts from which it appears there is 'the likelihood of substantial and immediate irreparable injury.'" Kilibarda v. M. Bjorn Peterson Transp., Inc., No. CV–12–01381–PHX–GMS, 2012 WL 6629630 at *4 (D. Ariz. Dec. 19, 2012)(holding that an owner-operator was not entitled to injunctive or declaratory relief under 49 U.S.C. § 14704(a)(1) where he did not allege that the defendant motor carrier's regulatory violations would cause him immediate, irreparable injury)(quoting City of Los Angeles v. Lyons, 461 U.S. 95, 103 (1983)).

Moreover, at least one Circuit Court of Appeals has determined that 49 U.S.C. § 14704(a)(1) provides a private cause of action only to enforce orders of the Secretary of Transportation, not regulations. See Owner-Operator Indep. Drivers Ass'n v. New Prime, Inc., 192 F.3d 778, 783 (8th Cir. 1999)(holding that "the first

---

[10] § 14102 requires motor carriers to put lease agreements in writing, keep a copy of the agreement in the leased vehicle, conduct inspections and carry insurance, and otherwise be in compliance with regulations; § 14103 regulates the loading and unloading of property involved in interstate commerce; § 14915(c) provides penalties for "failure to give up possession of household goods."

14

sentence of § 14704(a)(1) does not authorize the Owner-Operators to sue for violations of the Truth-in-Leasing regulations"), *cert. denied*, 529 U.S. 1066 (2000). In Owner-Operator Indep. Drivers Ass'n, the 8th Circuit reasoned that "[g]iven the substantive and procedural differences between agency orders and regulations, and the policy differences inherent in government and private enforcement actions, we cannot ignore the plain language limiting the private right of action created by the first sentence of § 14704(a)(1) to suits to enforce agency orders." Id. In short, there is no authority to support the plaintiffs' assumption that a private cause of action exists here.

2.

In Count I, the plaintiffs allege that the lease agreement with NOLA Trucking was a Lease of a Motor Carrier under FMCSA regulations. They further allege that NOLA Trucking failed to provide them with proof that it had purchased the workmen's compensation insurance for which it had charged them, as required by 49 C.F.R. § 376.12(h) and (j).[11] What's starkly absent from the plaintiffs' papers is any authority for their apparent assumption that a private cause of action exists to enforce that section or their assertion that the private cause of action that *is* provided

---

[11] These are the sections requiring the motor carrier (here, NOLA Trucking) to provide the lessor with records of charge-back items, as well as proof of insurance, upon request.

15

by 49 U.S.C. § 14704(a)(1) applies to agency regulations in addition to orders from the Secretary or Board. The Court agrees with the Eighth Circuit's determination in <u>Owner-Operator Indep. Drivers Ass'n</u> that reading a private cause of action into 49 U.S.C. § 14704(a)(1) to enforce 49 C.F.R. §§ 376.12(h) and (j) would undermine the intent of Congress in declining to expressly provide one and in differentiating between orders and regulations. 192 F.3d at 783. Because there is no private cause of action created by the regulations the plaintiffs invoke, the Court does not have subject matter jurisdiction over their claim. See <u>Boe</u>, 642 F.2d at 279 (affirming the district court's ruling that "plaintiffs did not state a claim for relief which would provide federal question jurisdiction under 28 U.S.C. s 1331(a)" when the plaintiffs asserted a civil claim under a statute which provided no private right of action). As a result, the plaintiffs' claims in Count I must be dismissed.

*B.*

1.

In Count II, the plaintiffs allege that NOLA Trucking was operating as a broker and failed to provide them with all records of the brokerage transactions, violating federal regulations of transportation brokers. Again, plaintiffs offer no support for their assumption that a private cause of action exists.

49 C.F.R. § 371 defines "broker" as "a person who, for compensation, arranges, or offers to arrange, the transportation of property by an authorized motor carrier." 49 C.F.R. § 371.2(a)(2016). That section further provides that:

> Motor carriers, or persons who are employees or bona fide agents of carriers, are not brokers within the meaning of this section when they arrange or offer to arrange the transportation of shipments which they are authorized to transport and which they have accepted and legally bound themselves to transport.

Id. Among other things, brokers are required to keep a record of:

> [t]he amount of compensation received by the broker for the brokerage service performed and the name of the payer; [a] description of any non-brokerage service performed in connection with each shipment or other activity, the amount of compensation received for the service, and the name of the payer; and [t]he amount of any freight charges collected by the broker and the date of payment to the carrier.

49 C.F.R. §§ 371.3(a)(4)-(6)(2016). While 49 C.F.R. § 371.3(c) provides that "[e]ach party to a brokered transaction has the right to review the record of the transaction required to be kept by these rules," this falls short of creating a private cause of action for enforcing the regulations. See D.V.C. Trucking, Inc. v. RMX Global Logistics, No. Civ.A. 05—CV—00705, 2005 WL 2044848, at *4 (D. Colo. Aug. 24, 2005)(noting that "49 U.S.C. § 14122, the statute that authorizes the Secretary of Transportation to promulgate regulations regarding the maintenance of these records,

17

contains no provision for a private right of action to enforce the record-keeping obligation."). Thus, even if NOLA Trucking was operating as a broker, the plaintiffs would still not be entitled to relief under 49 C.F.R. § 371.3 because its enforcement provision provides no private right of action. Again, the plaintiffs offer no support of their assumption that a private right of action exists.

2.

49 C.F.R. § 371 requires brokers to keep certain records pertaining to each brokerage transaction, and gives each party to the brokerage transaction the right to review such records. 49 C.F.R. § 371.3(c)(2012). The plaintiffs allege in Count II that NOLA Trucking withheld records allegedly pertaining to a brokerage transaction, "including the amount of compensation it received for the brokerage service, a description of any non-brokerage services performed in connection with the transaction, as well as the amount of compensation it received for such non-brokerage services and the name of the payor [sic] for such services." If NOLA Trucking was acting as a broker under 49 C.F.R. § 371, withholding such records would violate 49 C.F.R. § 371.3. But, the plaintiffs' claims in Count II fail for two independent reasons: (1) even assuming NOLA Trucking acted as a "broker," violations of 49 C.F.R. § 371 do not give rise to a private cause of action; and (2) the

summary judgment record shows that NOLA Trucking was not acting as a broker as a matter of law.

A broker is "a person who, for compensation, arranges, or offers to arrange, the transportation of property by an authorized motor carrier." 49 C.F.R. § 371.2(a)(2016). Notably, motor carriers are not brokers when "they arrange or offer to arrange the transportation of shipments which they are authorized to transport and which they have accepted and legally bound themselves to transport." Id. In an affidavit,[12] the plaintiffs describe the relationship between themselves and NOLA Trucking as follows: "[NOLA Trucking] receives the compensation for the shipments carried by [plaintiffs] from the third-party shippers and disburses the funds owed to [the plaintiffs] less charges and sums due [NOLA Trucking]." The plaintiffs further state that they "ha[d] no contact with the third-party shippers for whom [they] ship[ped] cargo." If the plaintiffs had no contact with the owners of the cargo, NOLA Trucking must necessarily have bound itself, not the plaintiffs, to transport such cargo. Therefore, NOLA Trucking was operating as the type of motor carrier which is specifically excepted from the definition of a broker in 49 C.F.R. § 371.2(a). As a result, the defendant would be entitled to judgment on Count II as a matter of law if the FMCSA regulations plaintiffs cite

---

[12] The plaintiffs individually submitted identical affidavits.

gave rise to a private right of action. Because the regulations give rise to no such right, and because the plaintiffs fail to advance any other basis for subject matter jurisdiction, their claims in Count II must be dismissed.

Accordingly, for the foregoing reasons, NOLA Trucking's motion to dismiss is hereby GRANTED. Both cases are hereby DISMISSED.[13]

New Orleans, Louisiana, July 15, 2016

```
                    MARTIN L.C. FELDMAN
                    U.S. DISTRICT JUDGE
```

---

[13] The Court notes that the only remaining claims are the defendant's state law contract claims as alleged in its counterclaim. Neither side suggests why this Court should not simply follow the "'general rule' [which] is to decline to exercise jurisdiction over pendent state-law claims when all federal claims are dismissed or otherwise eliminated from a case prior to trial.'" See Batiste v. Island Records, Inc., 179 F.3d 217, 227 (5th Cir. 1999)(collecting cases). Moreover, because NOLA Trucking asserts no independent basis in its counterclaim for subject matter jurisdiction, the Court dismisses the counterclaims for lack of subject matter jurisdiction.

Whether or not plaintiffs have administrative rights to present such issues to the Secretary of Transportation is a matter not addressed by the Court, nor is it before the Court.